OPINION OF THE COURT
Raymond Harrington, J.
History teaches that the informer is one of mankind’s most enduring vocations. Whether time calls him traitor or patriot, loathsome or good citizen, he persists.
The courts, in our own imperfect democratic society, recognize the role of the informer in the detection of crime. For this reason, the law has long accorded a testimonial privilege to assure anonymity to informers.
“ ‘A genuine privilege, on ... fundamental principle ..., must be recognized for the identity of persons supplying the government with information concerning the commission of crimes. Communications of this kind ought to receive encouragement. They are discouraged if the informer’s identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity — to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has *553 an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.
“ ‘That the government has this privilege is well established, and its soundness cannot be questioned.’ 8 Wig-more, Evidence § 2374 (McNaughton rev. 1961).” (.McCray v Illinois, 386 US 300, 308-309.)
In our system of criminal justice and law enforcement, there is another significant protagonist. The prosecutor represents the government as the State’s lawyer. He is an agent of the executive branch of our government charged with the duty to see that the laws are faithfully executed and enforced in order to maintain the rule of law. He is both an administrator whose duty is to seek justice and an advocate who must not merely convict but must be guided by the ethical standards of the legal profession (see, generally, ABA Project on Standards for Criminal Justice, The Prosecution Function, Standard 1.1).
And so it is that the focus of the court’s present inquiry raises fundamental questions concerning the role of these two law enforcement protagonists, the prosecutor and the informer, in our criminal justice system — one a denizen of the secret world of crime and the other a member of the learned profession. In the grander sense, it is the conflict between a recognition of the base and venal in man that either motivates the informer or requires his protection and the lofty and dignified command the law gives to the prosecutor to seek justice that now comes before this court in this case.
In a more limited way, the issue this defendant raises for the court is: May a prosecutor counsel an informer to deceive defendant’s attorney (or his agents) and may he persist in that deception? If he does so, is that a violation of the defendant’s right to due process of law and/or the effective assistance of counsel?
*554 THE PROSECUTOR AND THE INFORMER
This informer is probably the most honorable of the various types of informers described by Wigmore. Indeed, in the opinion of this court, John Rollins is a good citizen.
The court heard the testimony of John Rollins in an “Alfinito-Franks” hearing (People v Alfinito, 16 NY2d 181; Franks v Delaware, 438 US 154), considered his demeanor and his manner. The court found him to be a credible witness. Two important conclusions were reached by this court concerning John Rollins. First, he was genuinely motivated in the first instance to go to the police because serious crimes might go undetected. Second, the fear of harm to himself and/or his family was and is bone fide in his mind.
Mr. Rollins’ co-operation in the investigation of this case is a matter of record both in the warrant applications and the above hearing. On January 21, 1981, the events that relate to this application began to unfold. Rollins was called on the phone that day and the party (Mr. Race, a private investigator for the defendant Eleonore Kessler) identified himself as an investigator on the Kessler case and asked to speak to him about the case. Rollins did not know who this party was nor to whom he owed his allegiance. Nevertheless, Rollins agreed to a meeting at a diner but insisted it would not be at his home. The protection of his home at this point is the first indicia of fear by John Rollins. The second indicia was his immediate phone call to Assistant District Attorney Weiss. Rollins apparently agreed to the meeting because he felt that a refusal might appear to be an admission to his role as an informant. He felt trapped by the focus upon him and apparently intended to try to finesse the attention away from him. For this purpose, he sought the advice of the prosecutor.
It is conceded by the People that Rollins asked Mr. Weiss if he had to tell the truth. John Rollins was told that he did not have to tell the truth. He was not told specifically what to say, but he was advised that he did or did not have to meet with the investigator, but if he did, he did not have to tell him the truth. Mr. Rollins, at the hearings regarding these matters, candidly admitted that he lied in several significant respects to the defendant’s investigator. He also *555 admitted the truth of the allegations attributed to him by the police officer applying for the initial wiretap in this case.
The statements made to Mr. Race became the basis for applications to the court to suppress the wiretaps on the grounds of a perjurious affidavit. The court’s decision to grant a hearing and the hearings held were a consequence of the Race-Rollins interview.
DUE PROCESS — ALLEGED PROSECUTORIAL MISCONDUCT
This defendant’s first ground for dismissal of the indictment in the present application is based upon the alleged prosecutorial misconduct in advising Rollins that he need not tell the truth and persisting in that deception of the defendant until the hearing. The request is framed in part as a request for a dismissal in the interests of justice (CPL 210.40; People v Clayton, 41 AD2d 204) and, in part, on constitutional due process grounds because of alleged prosecutorial misconduct (cf. People v Isaacson, 44 NY2d 511).
In the first instance, upon consideration of all the relevant factors listed in CPL 210.40 (subd 1, pars [a]-|jD the court finds no compelling factor, consideration or circumstance demonstrating that conviction or prosecution upon this indictment would constitute or result in injustice. The motion on these grounds is denied.
The constitutional aspect of this defendant’s motion brings the court to the heart of the entire matter — was there prosecutorial misconduct?
In the first instance, there must be a distinction made between an informant and a witness. It is elementary that a prosecutor should not obstruct communications between prospective witnesses and defense counsel (ABA Project on Standards for Criminal Justice, The Prosecution Function, Standard 3.1 [c]). It is also unprofessional conduct to advise any person to decline to give information to the defense {ibid.).
The prosecutor did neither in this case — he did not obstruct communications with a prospective witness or advise the informant not to give information to the defense. Simply, what he did do was obstruct communications of an informer with the defense. His justification for *556 this was to protect the confidentiality of the informer. The necessity for protection of the confidentiality of the informer has been discussed. Again, it is a principle of soundness, vigorously enforced in every jurisdiction in this country.
All of the cases cited by the defense concern prosecutorial obstruction of communications with witnesses or interference with an interview of the informant after disclosure of the identity by court order when the informant had taken on witness status. The court has carefully researched the case law of all the States and the Federal system and has been unable to find any case directly bearing on the facts of the present case. This apparently is so because of the unique situation herein where the defendants, for whatever reason, strongly suspected John Rollins was the informant and John Rollins, for his reasons, chose to communicate with the defense albeit in a deceptive manner.
Whatever other truisms there may be in this unique case, none can doubt the right of John Rollins to lie in these circumstances to protect his identity. If this is so, there can be no doubt that a corollary to that truism is the right, even the duty, of the prosecutor to use every method within the bounds of the law to protect that informant.
In the final analysis, this court comes down on the side of reality. The prosecutor may counsel an informant that he has the right to lie to protect his identity and he may persist in this knowing deception once he is aware of it until the informer’s identity is disclosed. To permit less than that would lead to the revelation of informers before required by law, end their usefulness to the government and discourage others from doing the same. The acts of this prosecutor were not misconduct under these circumstances.
EFFECTIVE ASSISTANCE OF COUNSEL
The court having held that there was no prosecutorial misconduct in this case, it follows that the right to the effective assistance of counsel was not impaired. In any event, this court is familiar with the history of this entire complex case and does not believe that the revelation that *557 Mr. Rollins lied to Mr. Race impaired the defense or led the defense down the wrong track. Counsel for all of the defendants in this case have been very effective in arguing every legal issue, exploring every avenue of relief for their clients, and diligent in seeking information from the People. Counsel has also done prodigious work in review of, preparation of transcripts and pretrial hearings on the wiretaps in this case. The defendants have had more than just effective assistance of counsel and the failure to expose the informant by the People has not modified the quality of that counsel.
PARTICULARS
The court finds that the prosecutor has adequately complied with its previous order regarding particulars.
Where these defendants have, through various devices, obtained in substance the entire People’s case prior to trial, the court is satisfied that the defendants have had adequate constitutional notice of the nature of the charges.
For all of these reasons, the motion to dismiss is denied in all respects.